NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1202
_____

SANACT, INC.,
doing business as ROTO ROOTER

v.

US PIPELINING, LLC


PSI Pumping Solutions, Inc.,

                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa No. 2-18-mc-00214)
Honorable Juan R. Sánchez, Chief United States District Judge

_____

Argued October 20, 2020

BEFORE:  GREENAWAY, JR., COWEN, and FUENTES, <u>Circuit</u> <u>Judges</u>

(Filed: December 15, 2020)
_____


Joseph M. Kanfer     [Argued]
Timothy J. Woolford
Woolford Kanfer Law
101 North Pointe Boulevard
Suite 200
Lancaster, PA 17601
      *Counsel for Appellant*

John R. Zonarich     [Argued]
Skarlatos & Zonarich
320 Market Street
Suite 600W
Harrisburg, PA 17101
     *Counsel for Appellee*

_____

OPINION*

_____

COWEN, <u>Circuit</u> <u>Judge</u>.

Garnishee PSI Pumping Solutions, Inc. ("PSI") appeals from the order of the United States District Court for the Eastern District of Pennsylvania entering judgment in favor of Plaintiff Sanact, Inc. ("Sanact") and against PSI in the amount of $197,133.82 for accounts payable to Defendant US Pipelining, LLC ("US Pipelining"). PSI also appeals from the District Court's order denying its motion for relief from judgment under Federal Rule of Civil Procedure 60(b). We will vacate both orders and remand for further proceedings.

I.

On December 28, 2018, Sanact registered in the District Court three judgments against US Pipelining and in Sanact's favor from the United States District Court for the District of Hawaii. In total, Sanact's judgments amounted to $199,633.82. After Sanact had obtained a judgment against Santander Bank via Pennsylvania's garnishment process, this amount was reduced to $199,010.52.

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

On July 30, 2019, Sanact filed a praecipe for writ of execution, and the writ of execution was issued on the same day. The writ of execution—together with the writ of execution notice, the claim for exemption form, and interrogatories to garnishee—were served on PSI. The interrogatories asked PSI to answer, among other things, the following question:

1. At the time you were served or at any subsequent time did you owe the defendant any money or were you liable to the defendant on any negotiable or other written instrument, or did the defendant claim that you owed the defendant any money or were liable to the defendant for any reason?

(A40.)

On September 5, 2019, PSI's answer to Sanact's interrogatories was filed. Matthew Aiello, PSI's project manager, signed this letter on August 30, 2019. In response to Interrogatory #1, he stated the following:

1. Yes, PSI still has an outstanding balance owed the defendant a balance of $522,791.00. They still owe money to various contractors/suppliers on our job in the amount of $323,086.00 to MTC, and other amounts at the request of US Pipelining to PSI to coordinate equaling $206.015.37. Along with Powerhouse Equipment & Engineering Company for the amount of $16,510.56.

(A39.)[1] Sanact then filed on September 6, 2019 a praecipe to enter judgment against PSI, claiming that, pursuant to PSI's answer, PSI owes US Pipelining an outstanding balance in the amount of $522,791.00. According to Sanact, "[t]he payments that [US Pipelining] owes to its various contractors and/or suppliers are the debts and obligations of [US Pipelining] and have no bearing on or relevance to the amount that [PSI] owes to [US

---

[1] Separately, Matthew Aiello also filed an additional answer on behalf of PSI, stating that "Yes, PSI still has an outstanding balance owed the defendant." (A50.) "The record does not reflect the reason for the two answers." (Appellant's Brief at 7 n.3.)

Pipelining]," and "[PSI] has no contractual obligation to pay [US Pipelining's] contractors and/or suppliers." (A58.) "In fact, [PSI] is prohibited from paying [US Pipelining's] debts or obligations on behalf of [US Pipelining]."[2] (Id.; see also A59 ("Pursuant to paragraph (2)(b) of the Writ of Execution, garnishee, [PSI] is prohibited from 'paying any debt to or for the account of defendant and from delivering any property of defendant or otherwise disposing thereof.'").)

On September 20, 2019, the District Court ordered judgment be entered in favor of Sanact and against PSI in the amount of $197,133.82 for accounts payable to US Pipelining. Now represented by counsel, on September 30, 2019 PSI filed a motion requesting relief from the judgment under Rule 60(b). It submitted with this motion declarations executed by the Aiellos as well as amended answers to interrogatories with new matter. After conducting oral argument and receiving additional briefing, the District Court denied the Rule 60(b) motion on December 31, 2019.

II.

Pennsylvania Rule of Civil Procedure 3146 governs "Judgment against Garnishee upon Default or Admission in Answer to Interrogatories."[3] Specifically, Rule 3146(b)(1)

---

[2] Due to a miscalculation with respect to the prejudgment and postjudgment interest, the District Court Clerk believed that the judgment sought exceeded the registered amounts and accordingly referred the praecipe to enter judgment to the District Court. The District Court conducted a telephone conference regarding this possible discrepancy, with Matthew Aiello and Michael Aiello (vice president and CEO of PSI) speaking on behalf of PSI.

[3] The District Court had jurisdiction over this garnishment proceeding pursuant to 28 U.S.C. § 1367. See, e.g., Peacock v. Thomas, 516 U.S. 349, 356 (1996) (indicating approval of exercise of ancillary jurisdiction over garnishment proceedings). We have appellate jurisdiction under 28 U.S.C. § 1291. "The District Court's decision to enter

4

states the following:

> Subject to paragraph (2) of this subdivision [applicable to financial institutions], the prothonotary, on praecipe of the plaintiff, shall enter judgment against the garnishee for the property of the defendant admitted in the answer to interrogatories to be in the garnishee's possession, subject to any right therein claimed by the garnishee, but no money judgment entered against the garnishee shall exceed the amount of the judgment of the plaintiff against the defendant together with interest and costs. The entry of judgment shall not bar the right of the plaintiff to proceed against the garnishee as to any further property or to contest any right in the property claimed by the garnishee.

It is clear that this manner of entering judgment—which involves the prothonotary (or clerk in the case of federal district courts)—is triggered in only certain limited circumstances. We agree with PSI that such circumstances were not present in this matter.

"Admissions of a garnishee in answers to a judgment creditor's interrogatories will support the entry of a judgment thereon 'only in a clear case, where there is a distinct admission of liability by the garnishee to the defendant.'" Ruehl v. Maxwell Steel Co., 474 A.2d 1162, 1163-64 (Pa. Super. Ct. 1984) (quoting Bartram Building & Loan Ass'n

---

judgment based on PSI's admission contained in its Answers to Interrogatories is reviewed de novo." (Appellee's Brief at 13 (citing Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195-96 (3d Cir. 2019)); see also Appellant's Brief at 13-14.) We review the District Court's denial of relief under Rule 60(b) for an abuse of discretion (other than a ruling under Rule 60(b)(4), which triggers a plenary standard of review). See, e.g. Page v. Schweiker, 786 F.2d 150, 152 (3d Cir. 1986).

It is undisputed that Pennsylvania law governs the execution and garnishment process in this matter. Fed. R. Civ. P. 69(a)(1). Ultimately, the plaintiff assumes the rights the defendant has against the garnishee while the garnishee is permitted to raise any defense or counterclaim it may possess against the defendant. See, e.g., Pa. R. Civ. P. 3145(b)(2); Collins v. O'Donnell, 191 A. 22, 23 (Pa. 1937); Frazier v. Berg, 159 A. 541, 543 (Pa. 1932).

5

v. Eggleston, 6 A.2d 508, 510 (Pa. 1939)).  As the Pennsylvania Superior Court has indicated (by quoting with approval the "authoritative work on Pennsylvania practice," Siders v. Upper Miss. Towing Corp., 423 F.2d 535, 537 n.3 (3d Cir. 1970)):

> Certainly, if there is any doubt regarding the garnishee's admission, the prothonotary cannot and should not enter judgment on the plaintiff's praecipe.  *The prothonotary, who acts in this regard in a purely ministerial capacity, can enter judgment only if the answers are clear and unequivocal; to analyze or interpret the garnishee's answers would be in effect to exercise a judicial function, which is in excess of his powers.*  The prothonotary should be guided by the usual practice in assumpsit actions.  Conformity to that practice is in fact dictated by Rule 3145(a).  In assumpsit, judgment on admissions in the pleadings—perhaps the closest analogue to judgment against the garnishee on the basis of admissions to his answer—cannot be entered unless some part of the plaintiff's claim is "*unequivocally and unqualifiedly admitted to be due by the defendant's answer.*" (emphasis added) (footnotes omitted).

Ruehl, 474 A.2d at 1164 (quoting Goodrich-Amram 2d § 3146(b):1.1).

PSI's answer to Sanact's interrogatories did not rise to the level of an unequivocal admission of liability.  According to Sanact, the statement "Yes, PSI still has an outstanding balance owed the defendant a balance of $522,791.00"—was "an unequivocal statement that PSI owes US Pipelining $522,791.00, an amount more than sufficient to satisfy Sanact's judgments against US Pipelining."  (Appellee's Brief at 17.) It then contends that the answer "provided that US Pipelining owed certain amounts to MTC and other third parties [which Pennsylvania Rule of Civil Procedure 3111(d) and the terms of the writ of execution prohibited PSI from paying], but the language does not alter PSI's initial statement that PSI owes money to US Pipelining."  (Id. (citing Martin v. Throckmorton, 15 Pa. Super. 632, 633-34 (1900)).)  Admittedly, the answer (unlike

6

PSI's appellate briefing or the amended answers it submitted in connection with its Rule 60(b) motion) did not explicitly reference any joint check agreement purportedly creating a direct obligation on the part of PSI to pay MTC for the supplies it had furnished to US Pipelining, setoffs, backcharges, or payment bonds.  However, it did juxtapose, on the one hand, "an outstanding balance owed the defendant a balance of $522,791.00" with, on the other hand, what PSI understandably characterizes as alleged setoffs, including $206,015.37 "at the request of US Pipelining to PSI to coordinate" as well as the $323,086.00 owed to MTC (which together exceed the outstanding balance).  (JA39.)  Such ambiguous language obviously called for the sort of analysis or interpretation that a clerk or a prothonotary simply should not perform.  Accordingly, the entry of judgment in this matter could not be considered a purely ministerial act.

Prior to oral argument, we asked counsel "to please review and be prepared to discuss Lancaster County Bank v. Gross, 50 Pa. 224, 229 (Pa. 1865) ('the court cannot go outside of the answers or receive extraneous proof to qualify or contradict')" and to address "the applicability of this case to the instant matter."  (Clerk's Letter at 1.)  This 1865 decision made clear that the answers themselves "form the exclusive foundation of the judgment." Id. at 229.  "In such a case, the court cannot go outside of the answers, or receive extraneous proof to qualify or contradict." Id.  Accordingly, the Pennsylvania Supreme Court upheld the refusal to enter judgment upon the answers, which (by incorporating the auditor's report) "averred that the [legacy to the defendant] had been assigned to [another] before service of the attachment [and that this individual then assigned the share to yet another person all before the death of the testatrix]." Id. at 230.

7

According to the <u>Lancaster County Bank</u> court:

> It will be observed then that the report does not furnish the assignments themselves, nor any facts bearing upon the circumstances of Jacob L Gross, the defendant, or upon the consideration of the assignments. We have then simply the fact furnished by the answer that this legacy had been assigned by Gross, the defendant, before the service of the attachment. This was sufficient for the court to refuse judgment, for it could not go outside of the answers to try the case. That can be done only upon an issue wherein the facts would be submitted to the jury. If the court should undertake to try the cause before itself, how is it possible its errors could be corrected? The facts constituting fraud, want of consideration, or other matter alleged against the assignment, cannot appear in the record. There is no bill of exceptions and no mode of bringing them here for review.

<u>Id.</u> at 229-30.

In <u>Martin</u>, the Pennsylvania Superior Court reviewed an answer filed by an attorney who claimed, inter alia, a setoff for counsel fees and costs incurred as counsel for the defendant in the defendant's capacity as a guardian. <u>Martin</u>, 15 Pa. Super. at 633-34. According to the <u>Martin</u> court, "[t]he answer of a garnishee is not to be construed with the same strictness as an affidavit of defense, but where such answer contains either a distinct admission of funds in possession, or of such facts as leave the possession of such funds a mere inference of law, the proper course is to enter judgment against the garnishee upon his answer." <u>Id.</u> The state appellate court then applied the well-established rule that "he who as an attorney at law has in any proceeding collected money for his client cannot set off against his client's claim for that money a claim due him for services as counsel in any proceeding other than that out of which the money came, unless the client has expressly agreed that the fund shall be so appropriated." <u>Id.</u> at 634. Furthermore, an attorney cannot retain out of the money collected for his client as an

8

individual compensation for services rendered to the client as a trustee absent the client's express agreement. Id. at 634-35. In Martin, "[t]he answer of the garnishee does not allege that the defendant had agreed that his compensation for services as counsel in other proceedings, or those rendered to her in her distinctive character of guardian, should be retained out of the fund in his hands, and it, therefore, follows that he would not have been entitled to retain such compensation as against the demand of the defendant." Id. at 635 ("He could not have set off these claims as against his client at the time the writ was served upon him, nor when he filed his answer, and what the client could demand the garnishee is certainly entitled to recover."). However, the answer also claimed credit for counsel fees and costs incurred "in the particular case in which [the attorney] received the money now in his hands." Id. at 634. The Pennsylvania Superior Court deducted these amounts because "[i]t is clear that the garnishee had the right to retain out of the money in his hands compensation for the services rendered by him as counsel in the particular proceeding in which he received that fund, together with the amount of the costs by him in that proceeding expended." Id. (citing Balsbaugh v. Frazer, 19 Pa. 95 (1852)).

Given this case law, judgment should not have been entered under Rule 3146. We do not decide at this time whether the purported setoffs were legitimate or not. See, e.g., Lancaster County Bank, 50 Pa. at 230 ("We correct this by entering the order that the court refuse judgment to the plaintiff upon the answers of the garnishees, discharge the rule to show cause, and give leave to the plaintiff to proceed and rule the garnishees to plead to issue and go to trial. The case then can be heard on all its facts, whether of fraud or of inadequacy of consideration, as bearing upon the question how far an assignment of

9

a legacy or distributive share in mere expectancy will be supported in equity."). Instead, we simply determine that the language of PSI's answer (i.e., "the exclusive foundation of the judgment," id. at 229)—by ambiguously referencing both an outstanding balance and several apparent setoffs—did not rise to the level of either "a distinct admission of funds in possession, or of such facts as leave the possession of such funds a mere inference of law," Martin, 15 Pa. Super. at 633-34. See also, e.g., Bd. of Trs. of Operating Eng'rs Local 66 Combined Funds, Inc. v. Huntar Dev. Corp., Misc. Action No. 04-399, 2007 WL 1816278, at *3 (W.D. Pa. June 22, 2007) (stating that, although certainly "not a model of clarity," general contractor's answer still indicated "that this was not a clear case of admitted liability and a judgment by admission should not have been entered.").

PSI argues that, "[e]ven if the September 19, 2019 Order were not subject to reversal, the district court erred by denying PSI's Motion for Relief from Judgment Under Rule 60(b)." (Appellant's Brief at 51.) Under Pennsylvania law, a garnishee may file a motion to strike or open the judgment with the trial court. See, e.g., Ruehl, 474 A.2d at 42 ("The unauthorized entry of a judgment by the prothonotary, however, renders a judgment void; and a judgment must be stricken if its defectiveness is apparent from the face of the record." (citing Jones v. Seymour, 467 A.2d 878, 880 (Pa. Super. Ct. 1983))). It appears undisputed that "[t]his [C]ourt has held that a party may obtain similar relief . . . through a Rule 60(b) Motion.'" (Appellant's Brief at 38 (citation omitted).) Rejecting PSI's argument that it entered judgment without complying with Pennsylvania's garnishment requirements, the District Court concluded that, "[a]lthough PSI stated US Pipelining owed varying amounts to MTC and another third party, the first statement of

10

its answer unequivocally admits PSI owes money to US Pipelining." Sanact, Inc. v. US Pipelining, LLC, MISCELLANEOUS ACTION No. 18-214, 2019 WL 7373743, at *5 (E.D. Pa. Dec. 31, 2019) (observing that PSI's additional statements did not raise any legal or factual issues that could be construed as effective denial of liability).  As we have explained, PSI's answer on its face did not rise to the level of an unequivocal admission of liability.  Accordingly, the District Court erred by denying relief under Rule 60(b).

## III.

For the foregoing reasons, we will vacate the District Court's September 20, 2019 order entering judgment in favor of Sanact and against PSI as well as its December 31, 2019 order denying relief from this judgment under Rule 60(b).  We will remand for further proceedings consistent with this opinion.