# Seybert, Appellant *v.* Salem Township.

*Attorney at law—Fees—Money in court.*

An attorney at law may claim his fees out of money secured through his services, only (1) when the money has come into his possession; and (2) when it has come within the grasp of the court. In other cases he must proceed in the ordinary way of recovering debts when legal proceedings are necessary.

Where an attorney at law has begun an action of trespass for a client, but before the case is tried, is discharged, and other attorneys prosecute the case to judgment, and receive the amount of the judgment, the attorney who was discharged cannot by a rule to show cause on the plaintiff secure payment of his fees out of the moneys in the hands of the attorneys who tried the case.

Argued Jan. 16, 1903. Appeal, No. 52, Jan. T., 1903, by plaintiff, from order of C. P. Luzerne Co., Feb. T., 1897, No. 114, making absolute rule on plaintiff to pay counsel fees, in case of Daniel F. Seybert v. Salem Township. Before BEAVER, SMITH, W. W. PORTER, W. D. PORTER and MORRISON, JJ. Reversed.

Rule on plaintiff to show cause why $500 should not be paid out of money in the hands of his present attorneys, John T.

460    SEYBERT, Appellant, *v.* SALEM TOWNSHIP.

Statement of Facts—Opinion of the Court. [22 Pa. Superior Ct.

Lenahan and James L. Lenahan to T. R. Martin, his former attorney, for his services as attorney.

The facts appear by the opinion of the Superior Court.

*Error assigned* was order making the rule absolute.

*John D. Farnham* and *Alexander Farnham*, for appellant.— An attorney has not a lien on money in the hands of another: Irwin v. Workman, 3 Watts, 357; Dubois's App., 38 Pa. 231; McKelvy's App., 108 Pa. 615.

*Rush Trescott*, for appellee.—In the absence of any express agreement, an attorney may recover from his client a quantum meruit for his services rendered: Foster v. Jack, 4 Watts, 334; Young v. Merkel, 163 Pa. 513; Thompson v. Boyle, 85 Pa. 477.

The appellant is entitled to his fee out of the fund in question: Cook's Est., 1 Phila. 408; Manderson's App., 113 Pa. 631; Price's App., 116 Pa. 410; Burns's Case, 6 Pa. C. C. Rep. 159; Fidelity Ins., etc., Co.'s App., 108 Pa. 339; Patten v. Wilson, 34 Pa. 299; McKelvy's App., 108 Pa. 615; Good v. Grant, 76 Pa. 52; Read v. Dupper, 6 T. R. 361; Welsh v. Hole, 1 Doug. 238; Spencer's App., 9 Atl. Repr. 523; Atkinson's App., 11 Atl. Repr. 239; Davies's Case, 93 Pa. 116.

OPINION BY SMITH, J., March 12, 1903:

This appeal presents an attempt to extend the powers of an attorney at law over a former client's money, and, by the aid of a court, to appropriate it to the attorney, without recourse to the ordinary methods established by law for the collection of debts.    The appellant, Daniel F. Seybert, having a claim against Salem township for damages for personal injuries, consulted the appellee, T. R. Martin, Esq., an attorney at law, who, after ascertaining the facts, brought an action of trespass therefor against the township.    He filed a declaration and did other services in the preparation for the trial.    Before the cause was reached for trial, the appellee was discharged from the case and he rendered no further assistance.    No agreement whatever was made for payment of the appellee's services in the case, nor was there any stipulation as to how or when they would be paid.

The appellant employed other counsel who prosecuted the case to judgment, and received the amount of the verdict. After judgment the appellee petitioned the court, reciting the facts, and asked for a rule on the appellant to show cause why he should not pay the appellee the sum of $500, out of the moneys in the hands of the attorneys, who tried the case, and that they retain this amount in their hands until the rule prayed for is disposed of by the court. The rule was granted as asked for on May 21, 1900. Testimony as to the value of appellee's services was taken, and in a short opinion filed, the rule was made absolute July 18, 1902. The appellant denies the power of the court to make this order.

The right of an attorney at law in Pennsylvania to recover compensation for professional services by action or defalcation was finally determined in Balsbaugh v. Frazer, 19 Pa. 95. In that case the rights and duties which spring from the relation of attorney and client, and the conditions under which an attorney may recover fees for professional services, are clearly defined. It has also been held that in equity a chancellor has power to direct the payment of reasonable counsel fees out of moneys for distribution, when the fund is the product of the attorney's labors and he has agreed to look to it solely for his compensation: McKelvy's Appeal, 108 Pa. 615. And similar authority is vested in the orphans' court: Price's Appeal, 116 Pa. 410.

In Spencer's Appeal, reported in 9 Atlantic Reporter, 523, the fund, which had been produced through the services of the attorney, was paid into court, and, as the owner sought to withdraw it without paying the attorney fee, the court refused to permit him to do so, against the protest of the attorney who attended to the business which produced the money in contention. In Atkinson's Appeal, reported in 11 Atlantic Reporter, 239, the fund in contention was paid into court, and an auditor appointed to distribute it. It was found, as a fact, that the attorney in that case was, by agreement, to take his fees out of the fund then for distribution, which finding was approved by the court. The Supreme Court said, in that case, that as the attorney's entire compensation was to come out of the fund when realized, it would have been gross injustice to turn it over, as it was the result in large measure of his professional labor and skill, to an insolvent party, and leave him to an action

for his fees.   In this case also, the fund was regularly in court for distribution.

In brief, an attorney may claim his fees out of money secured through his services, only (1) when the money has come into his possession; (2) when it has come within the grasp of the court.   In the first case, his right, though sometimes described as a lien, is really the right to defalcate the amount due for his services against his client's demand for the money, the lien, strictly, being the right to retain the papers of his client until his fees are paid : Dubois's Appeal, 38 Pa. 231.   In the second case, his right is based on equitable principles, by which the court is governed in disposing of the fund : McKelvy's and Sterrett's Appeals, 108 Pa. 615.

In the case before us, the fund is neither in the attorney's possession, nor within the grasp of the court.   On no recognized principle, therefore, can it be made subject to the attorney's claim.   And as matter of fact, bearing on the attorney's right of recourse to it, according to the appellee's own testimony there was no agreement or provision of any kind for payment of his fees.   So far as we can ascertain from the record before us, the relation of the appellee and the appellant was simply that of debtor and creditor when the attorneys who finally recovered the money took charge of the case, and the fund now aimed at was created.

There is no warrant for the proposition that at law an attorney's claim for services for a sum not judicially ascertained nor assented to by a client who is indebted, is entitled to precedence over other claims, and we see no ground in the present case to justify a departure from the ordinary method of recovering debts, when legal proceedings are necessary.   As was said in Thompson v. Boyle, 85 Pa. 477: " The implied contract between counsel and client has become the subject of litigation and the law applies to it the same principles that are applicable to other similar contracts, and affords relief in the same forms that it affords it to litigants concerning them . . . . A lawyer may bring suit for his fees, but his cause is to be tried like the causes of other men."   As we said in Patrick v. Bingaman, 2 Pa. Superior Ct. 113 : " However desirable it may be to allow claims of counsel for services out of funds which

those services secured, it cannot be done, in the absence of legislation permitting it."

With this determination of the controlling point of contention, it is unnecessary to consider the other questions suggested on the argument.

The decree of the court below making the rule absolute is reversed and set aside, and the petition dismissed at the costs of the appellee.